IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **TEAM PLAY, INC., P&P MARKETING, INC., & COSMODOG, LTD.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 03 C 7240 |
| | ) | |
| **STEPHEN W. BOYER D/B/A SKYBOY PRODUCTIONS & SKYBOY PRODUCTIONS, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **STEPHEN W. BOYER,** | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **TEAM PLAY, INC., P&P MARKETING, INC., & COSMODOG, LTD.,** | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This action involves disputed intellectual property rights and royalties in connection with video games played both in arcades and on personal computers. Plaintiffs Team Play, Inc. ("Team Play"), P&P Marketing, Inc. ("P&P"), and Cosmodog, Ltd. ("CMD"), Illinois corporations ( collectively, "plaintiffs"), are all engaged in one or more aspects of producing, marketing and selling video games. Plaintiffs sue Stephen W. Boyer d/b/a Skyboy Productions, a citizen and resident of California ("Boyer") for a declaratory judgment

that plaintiffs' "Police Trainer 2" video game does not infringe any of Boyer's rights and that plaintiffs do not owe Boyer further royalties. Plaintiffs also seek to recover from Boyer their fees and costs associated with bringing this action and "at least $175,000 in duplicative royalty payments mistakenly paid to Boyer." Boyer counterclaims, asserting that plaintiffs have violated his copyright registrations for Police Trainer and Sharpshooter by selling Police Trainer 2, which is derived from his copyrighted video games; and that P&P and Team Play have breached a contract term requiring royalty payments on sequels and derivative games.

Before the court are plaintiffs' separate motions for summary judgment of noninfringement of the Sharpshooter and Police Trainer copyrights; and both sides' motions for summary judgment on contract issues. Also before the court are Boyer's motions to strike the declaration of Ralph Oman, one of plaintiffs' experts, and to strike the reply materials filed by plaintiffs in support of their summary judgment motions for declarations of noninfringement. I take up the summary judgment motions in the order in which they were filed.

## I.   FACTUAL BACKGROUND

P&P and TP are owned or controlled by Edward (Ed) Pellegrini, individually or with his brother Frank Pellegrini. Ed Pellegrini also owns or controls other companies in the video game field.

Boyer taught analog and digital electronics, kinetics and sound design from 1995 through 2001 at the School of the Art Institute of Chicago. Boyer worked as a producer of interactive music for MTV and other media companies. During the period 1989-93 he worked as a software engineer and lead architect and manager of programing staff for Exit Entertainment, the development team of plaintiff P&P. In 1995, Boyer formed Skyboy and employed staff to assist him in the business of creating and developing video games.

In December 2000, Boyer caused Skyboy to be dissolved and in connection with its liquidation took an assignment of all of Skyboy's intellectual property rights. Boyer alleges as follows: In mid 1995, Ed Pellegrini spoke to Boyer about having Skyboy develop a video game with a shooting theme. In late 1995, Boyer, as president of Skyboy, and Pellegrini as president of P&P, entered into an oral agreement under which Skyboy would author and develop intellectual property for the game which ultimately was titled "Police Trainer".[1] Pursuant to the agreement, Skyboy was to be paid a sum for development work plus certain royalties. On or about April 18, 1996, Boyer sent Ed Pellegrini a letter memorializing the terms of the oral agreement under which they were operating. The letter stipulated that in addition to development fees and royalties on units sold, Skyboy was to be paid 33 percent of all

---

[1] Police Trainer was initially called "Metro Police Academy" shooting game.

3

revenues received by P&P from ancillary products including sequels and home games. P&P never objected to the terms of the April 18, 1996 letter. Plaintiffs subsequently made sales of the game Skyboy had developed, marketing the game under the name "Police Trainer". TP paid Skyboy/Boyer approximately $500,000 pursuant to the agreement but has failed to account for all royalties owed, or to acknowledge any liability for royalties in connection with Police Trainer 2, which Boyer claims is an ancillary product or sequel within the meaning of the agreement.

Boyer further alleges that beginning in about early 1997, the Skyboy design team began working on another target shooting game which eventually was called "Sharpshooter." Skyboy reached another oral agreement with P&P, pursuant to which Skyboy was to be paid an amount to defray development costs for Sharpshooter, plus royalties. Skyboy was never an author for hire and hence all original works of authorship created by Skyboy belonged exclusively to it. In 2000, Boyer caused Skyboy to be dissolved and, in 2001, as part of the corporate winding up process, took an assignment from Skyboy of all its intellectual property rights. He has since obtained certificates of registration from the Copyright Office for U.S. Copyrights on "Police Trainer Art Work", Sharpshooter, and Police Trainer Reference Graphics and Source Images Artwork.

Plaintiffs' version of the facts contradicts Boyer's in several material respects. Plaintiffs assert that Boyer and

4

employees of Skyboy merely "contributed to the development of the source code and graphical images/artwork for Sharpshooter." (SS SMF ¶ 13) Plaintiffs deny Boyer's allegations that Boyer, Skyboy, and the members of Skyboy's design team did not have a "work-for-hire" agreement with plaintiffs, or were not employees of plaintiffs. According to plaintiffs, Fred Heyman, then an employee of a Pellegrini entity wrote some of the foundation-level source code for Sharpshooter. This is in turn disputed by Boyer, who alleges in his Declaration that Heyman was not an employee of any of the plaintiffs and provided only the low-level application programming interface necessary to interact with the hardware that Heyman had designed and built. (Boyer Dec. ¶ 40)

## II. STANDARDS APPLIED IN DETERMINATION OF COPYRIGHT INFRINGEMENT CLAIMS

Works of art and other expressive materials may be subject to copyright protection for a period of time under the Copyright Act, Title 17 U.S.C. ("Act"), subject to certain exceptions. The Act expressly provides that ideas and concepts are not subject to its protection. 17 U.S.C. § 102(b). It is commonly said that the protection afforded goes only to expression and not to ideas. By judicial gloss, "scenes a faire" are unprotectible under the Act except in certain limited circumstances. The term "scenes a faire" refers to "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Atari, Inc. v North American Philips*

5

*Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir. 1982)(quoting from *Alexander v. Haley*, 440 F. Supp. 40, 45 (S.D.N.Y. 1978). Similarly, expressive material which is so closely related to an idea or concept as to be indistinguishable from the idea or concept expressed will be given very limited protection, meaning that the copyright is protectible only against identical copying. *Gentieu v Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838, 850 (N.D.Ill. 2003).

"To establish infringement a plaintiff must prove ownership of a valid copyright and 'copying' by the defendant." *Atari*, 672 F.2d at 614. "Because direct evidence of copying is often unavailable, copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." Id.

The fact that the United States Register of Copyrights has issued a certificate of registration for a work is only *prima facie* proof of copyright. It gives rise to a rebuttable presumption of validity, which the accused infringer may overcome by showing that the copyright is invalid. *JCW Investments, Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1031 (N.D.Ill. 2003).

### III. THE MOTION TO STRIKE EXPERT TESTIMONY

As a threshold matter, I first address Boyer's motion to strike the declaration of one of plaintiffs' experts, Ralph Oman. Mr. Oman opines that the Sharpshooter registration is invalid and

6

void because it is only prima facie proof of copyright, and because the graphic art which Mr. Boyer points to as evidence of copying cannot be the subject of copyright protection. In his view, that art consists either of scenes-a-faire or "ideas" which, no matter how expressed, are not subject to protection under the Copyright Act. 17 U.S.C. § 117.

Boyer objects to the declaration on several grounds. He contends that: (1) the legal conclusions and arguments it sets forth are not helpful to the trier of fact in understanding evidence or determining any issue; (2) the opinions are wholly conclusory and not supported by facts admissible in evidence; and (3) Mr. Oman has not set forth in his declaration a factual basis sufficient for him to be accepted as an expert in such matters.

Boyer, citing *Atari, supra,* 672 F.2d at 614, bases his first argument on the premise that the test for "illicit copying" is based upon a substantial similarity test which looks to the response of the ordinary observer and thus bars the use of analytic dissection and expert testimony. But *Atari* itself recognizes the opposite principle.

> This appeal requires us to address the related question of the scope of copyright protection to be afforded individual games such as PAC-MAN. To do so, we must first attempt to distill the protectible forms of expression in PAC-MAN from the game itself.

*Atari,* 672 F.2d at 615.

The district courts may and do rely on expert testimony to distinguish between protected and unprotected material in a work for which copyright is claimed. *Kohus v. Mariol*, 328 F.3d 848, 854-55 (6th Cir. 2003); *Susan Wakeen Doll Co. v Ashton Drake Galleries*, 272 F.3d 441, 451 (7th Cir. 2001); Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004).

The opinions of Mr. Oman are not, as Boyer contends, *wholly* conclusory and devoid of evidentiary support. They are based on, among other things, Boyer's answers to interrogatories and screen shots of Sharpshooter and Police Trainer 2 whose authenticity is not challenged. As for Mr. Oman's credentials to offer those opinions, to the extent that the opinions are relevant, he is qualified to offer them – up to a point. Mr. Oman has served as United States Register of Copyrights, has acted as an advisor to Congress on legislation and as principal advisor to the Department of State on international copyright matters. He is actively engaged in the practice of intellectual property law. In addition, he teaches Copyright Office registration matters (including registration of video games) and essentials of copyright protection at George Washington University Law School. He is a published author and a frequent speaker on copyrights. But Mr. Oman's opinions as to whether certain elements of Sharpshooter are scenes a faire and not subject to protection under the Act, remain *opinions*. They do not bind the trier of fact. *Autoskill v. National*

*Educational Support System*, 994 F.2d 1476, 1493 (10th Cir. 1993).
Just as the granting of a registration by the Copyright Office is
merely *prima facie* proof of its validity, the opinions of an expert
are merely a factor to be weighed by the trier of fact    when
determining whether a registered work was illicitly copied.

I have ignored Mr. Oman's opinions as to what is or is not
original to Sharpshooter, since his declaration fails to show that
he has a wide range of familiarity with prior video shooting games.
But that does not render his entire declaration invalid or
unhelpful. I deny the motion to strike Mr. Oman's declaration and
the accompanying request for sanctions.

## IV. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## ON THE SHARPSHOOTER REGISTRATION

Summary judgment is proper if the record shows that there is
no genuine issue as to any material fact, and that the moving party
is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
A genuine issue for trial exists only when "the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 248 (1986).
If the nonmoving party's evidence is merely colorable, or is not
significantly probative, summary judgment may be granted. *Id.* at
249-50. In deciding a motion for summary judgment, I must view all
evidence in the light most favorable to the nonmoving party, *Valley
Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th

9

Cir.), *cert. denied*, 484 U.S. 977 (1987), and must draw all reasonable inferences in the non-movant's favor . *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). I may not invade the province of the jury by making determinations of credibility, weighing evidence or determining what inferences may be drawn from admissible evidence. *Anderson*, 477 U.S. at 255.

Boyer claims that original creations of Skyboy included in Police Trainer, consisted among others of the following:

A. A fictional environment in which the players are presented with a series of spaces characterized by rusted and brushed metal doors, concrete embankments, holographic images, mechanical devices, spot-lights, a grid arrangement of rails or tracks for targets to move on and "glass" projection screens with target images projected on them that may be shot or shattered;

B. Depictions of golden metallic humanoid robots as targets and the specific animated method by which those targets fell when hit;

C. The game's testing of players on a combination of abstract skills including speed, accuracy, judgment, timing and simulation rather than just one or two of these skills;

D. The design, designation and sequence of six specific ranks or levels and their associated skill tests;

E. The arrangement of each level's challenges into three rows of two challenges and the arrangement of levels into a list;

10

F. A shooting game using a rhythm created by the timed rather than random release of targets to provoke a rhythmic shooting response from the player;

G. A shooting game which tested the player's memory to remember which partially hidden targets were friends and which were foes; and

H. A shooting game in which two targets are mechanically connected such that when one target is shot, the other is revealed.

Plaintiffs contend that Boyer cannot establish copyright infringement of the Sharpshooter game by Police Trainer 2 because: (1) there are no similarities between the source codes Sharpshooter and Police Trainer 2; (2) no substantial similarities exist between the graphical images for the two games; (3) Boyer identifies only four elements of allegedly protected expression to support his claim and these consist of uncopyrightable ideas and unprotectible elements of scenes a faire; (4) the games are dissimilar in both their overall concept and feel, and in their constituent elements; and (5) any similarities between the works are the products of the games' reliance on uncopyrightable ideas.

Plaintiffs have filed in support of their motion the declaration of their expert Bruce MacDowell Maggs, which establishes that the source code for Police Trainer 2 is not a copy of the source code for Sharpshooter. Boyer does not challenge Maggs' qualifications and has adduced no proof to contradict his

11

conclusions. Instead, he responded to detailed requests for admission of facts on that issue with objections and statements that he lacked information sufficient to admit or deny the requests. I find, therefore, that there was no copying of the source code of Sharpshooter in connection with the creation of Police Trainer 2. This fact alone, however, does not preclude the possibility that Police Trainer 2 infringes the Sharpshooter copyright.

Boyer's opposition to the motion argues first that the plaintiffs' approach is wrong because it compares Police Trainer 2 only with Sharpshooter while ignoring the far more pervasive copying from Boyer's Police Trainer. He cites 4 M. Nimmer, NIMMER ON COPYRIGHT "Nimmer"), § 13.03[A][1][e]at 13-52, n. 87 for the proposition that where an accused work is not substantially similar to any one in a series of works but is substantially similar to the series as a whole, "the defendant should not be able to avoid liability by the fact that the plaintiff's claim is predicated upon several different copyrights rather than a single one." As plaintiffs point out, the rule mentioned by Nimmer is inapplicable here for two reasons. One reason is that Boyer has admitted that Sharpshooter is not a sequel to Police Trainer, that those games are structurally different and have different themes, art sets, characters and scenes. The other reason is that the cases cited by Boyer on this point involved in one instance episodes from a long

12

running television series, "Seinfeld", which had the same characters, themes and events, and in the other instance, movies, television shows, and comic books about "Superman." Here, there is no such long relationship or continuity claimed as between Sharpshooter and Police Trainer 2. *Compare Castle Rock Entertainment, Inc v. Carol Publishing Group, Inc.*, 150 F.3d 132, 135-38 ( 2d Cir. 1998)(the "Seinfeld" case) and *Warner Brothers, Inc. v. American Broadcasting Co.*, 530 F. Supp. 1187, 1189-91 (S.D.N.Y. 1982)(the "Superman" case).[2]  I do not find Boyer's arguments as to the applicability of multiple copyrights persuasive in the present context.

The core issue here is whether, in applying the "substantial similarity" test for infringement, the court must first identify and exclude from analysis by the trier of fact (the jury) elements of the allegedly copyrighted work which are *not* subject to protection under the Act. Boyer argues that summary judgment is inappropriate because all questions of substantial similarity must

---

[2] Despite having filed a very narrowly focused motion for summary judgment on the issue of infrigement of the Sharpshooter copyright, plaintiffs further argue that even if Police Trainer 2 is substantially similar to Police Trainer, P&P cannot be held to infringe, because the earlier program is a "joint work" as defined in 17 U.S.C. § 101 of the Act and thus P&P is a co-owner of the Police Trainer copyright. This argument is the subject of another separate summary judgment motion made by Plaintiffs, and will be dealt with when the court addresses that motion. Its presence here is outside the scope of the motion under consideration and the evidence presented in support of it. I find the argument of co-ownership, in this context, irrelevant.

13

be decided by the jury. As noted earlier, that argument is incorrect. *See Incredible Technologies v. Virtual Technologies*, 284 F. Supp. 2d 1069, 1082-83 (N.D.Ill. 2003), affirmed 400 F.3d 1007 (7th Cir. 2005); *Gentieu v Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838, 848 (N.D.Ill. 2003)("t)he total concept and feel analysis may be applied only *after* the scope of copyright protection is determined.")(emphasis added). Boyer was asked in plaintiffs' interrogatories to identify the portions of Sharpshooter that Team Play allegedly copied in creating Police Trainer 2. In his supplemental response to plaintiffs' Interrogatory No. 7, Boyer identified only four pieces of graphical art in Police Trainer 2 as having been misappropriated from Sharpshooter. They are, respectively, (1) a shooting challenge in which targets float out of a cylindrical opening in the floor; (2) a shooting challenge in which targets are randomly arranged, and a player must remember which are which and only shoot certain targets; (3) a shooting challenge in which targets randomly "pop" out of cylindrical openings for the player to shoot; and (4) silver iconic objects that appear next to each completed challenge as a progress indicator.

As so articulated by Mr. Boyer, it is clear that each of the four pieces of allegedly misappropriated graphical art he describes is the embodiment of an uncopyrightable idea, scene a faire, or both. In each instance, they are subject to copyright protection

14

only from virtually identical copying. *Atari*, 672 F.2d at 616-17;
*Incredible Technologies,* 284 F. Supp. 2d at 1080-81.

Reproduced on the next two pages are screen shots from the
videos of Police Trainer 2 and Sharpshooter which show the
graphical art in question and which were submitted by plaintiffs as
parts of the Oman declaration.

1. **Police Trainer 2's "Balloons" Challenge v. Sharpshooter's "Floating Balls" Challenge**

 

(Boyer's Supplemental Response to Team Play's Interrogatory No. 7) (Police Trainer 2 image shown on the right; Sharpshooter image shown on the left).

2. **Police Trainer's "Memory" Challenge v. Sharpshooter's "Memory" Challenge**

 

(Boyer's Supplemental Response to Team Play's Interrogatory No. 7) (Police Trainer 2 image shown on the left; Sharpshooter image shown on the right.

3.    **Police Trainer's "Whack the Criminal" v. Sharpshooter's "Shoot the Alien"**



(Boyer's Supplemental Response to Team Play's Interrogatory No. 7) (Police Trainer 2 image

shown on the left; Sharpshooter image shown on the right).

4.    **Police Trainer's Icons in "Select Rank Exam" v. Sharpshooter's Icons in "Ultimate Challenge"**

Boyer did not produce screen shots to identify the images that he claims were copied.

However, based on Boyer's Supplemental Response to Team Play's Interrogatory No. 7, I

understand that Boyer is referring to the "iconic objects" shown in the screen shots below.



The above screen shots were taken from the DVD's, which contain complete videos of

the Police Trainer 2 and Sharpshooter games.

**Figure 2**

For purposes of determining infringement, courts in this circuit may make an ocular comparison of the works being analyzed for substantial similarity. *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1 (7th Cir. 1994). Ocular comparison demonstrates that the graphical images in Police Trainer 2 show no sign of "virtually identical" copying from Sharpshooter. Thus, they are not subject to protection under the Act. Since there was no copying of source code and these four items are the only pieces of graphical art Mr. Boyer identifies as having been misappropriated from Sharpshooter, I grant plaintiffs' motion with regard to the Sharpshooter copyright to the extent that it seeks a declaration of non-infringement. This holding, however, does not mean that the copyright is invalid or that Police Trainer 2 cannot be found to be a sequel to or derivative of Sharpshooter if the jury finds in favor of Mr. Boyer on his contract claim. In considering the Sharpshooter motion, I find it unnecessary to consider the reply materials submitted by plaintiffs in support of the motion. I therefore decline to consider now Boyer's motion to strike those materials and for sanctions.

Plaintiffs' motion for summary judgment with respect to the Sharpshooter copyright registration is granted for the reasons and to the extent indicated above.

18

## V. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT WITH RESPECT TO THE POLICE TRAINER COPYRIGHT

Plaintiffs' motion for summary judgment of noninfringement with respect to the Police Trainer copyright is not based on a lack of substantial similarity between the two games. Plaintiffs argue that P&P is a co-owner of the Police Trainer copyright, and thus plaintiffs may not be held liable for copyright infringement as a matter of law.

Plaintiffs advance four arguments to support their position. I find that Boyer has raised triable issues of facts that are material to the determination of whether plaintiffs may prevail on any of their theories.

Under the Act, a co-owner of a copyright may not be sued for infringement, nor may his licensees. Plaintiffs contend that Police Trainer was a joint work within the meaning of 17 U.S.C. § 101, which defines a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." In support of this contention plaintiffs cite certain testimony of Boyer which they construe as an admission of the validity of their theory. Boyer testified that he worked jointly with Fred Heyman, an employee of a Pellegrini controlled entity, to "make" the Police Trainer game. Mr. Boyer's deposition testimony may be at odds with his declaration on this point, but I cannot say that no reasonable

19

jury could rule in Mr. Boyer's favor. He did not testify that he regarded Mr. Heyman as a co-author of the work, and Mr. Heyman testified that with respect to the Police Trainer game, Mr. Boyer "thought that he was the lord and everyone else were the peons under him." That attitude would not have been consonant with the descriptions of joint ownership and joint authorship set forth in the cases or in Nimmer, INFORMATION LAW, § 4:39. Further, Mr. Boyer claims he sent a letter to Mr. Pellegrini in 1996 memorializing the terms of their oral agreement which clearly is at odds with this theory. He further claims that a copy of the same letter was faxed on his behalf to Ed Pellegrini's attorneys in 1997. By the terms of Mr. Boyer's letter, he was to receive royalties on sales of the game he developed. Mr. Pellegrini denies that he received the letter, but that does not end the inquiry. On the contrary, it poses a material issue of fact which must be decided by the jury. It is not entirely clear from the deposition testimony or the Boyer declaration just what Mr. Boyer *did* think when he allowed certain credits to appear on the Police Trainer Video Game. But a finding on that issue would require me to make a credibility determination which I may not do on summary judgment. I further find, based on the submissions of the parties, that there are other disputed issues of material fact too numerous to be catalogued here which make summary judgment an inappropriate remedy with respect to questions of: (1) whether Police Trainer 2 infringed Mr. Boyer's

copyright on the Police Trainer game; (2) whether P&P is a co-owner of Police Trainer by reason of Mr. Heyman's employment and contribution; (3) whether P&P had the right to grant non-exclusive licenses to Team Play and Cosmodog to use the copyright in Police Trainer; and (4) whether Mr. Boyer's claim of sole ownership of the copyright is barred by the statute of limitations. For the foregoing reasons, the motion for a summary judgment that Police Trainer 2 does not infringe the Police Trainer copyright is denied.

A consideration that plaintiffs do not address is that the co-owner of a joint work may have the right to use or license use of the work, but, if so, he must account to other co-owners for any profits. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994). Thus, even were I to grant summary judgment on this motion, plaintiffs would not necessarily be absolved from liability.

Boyer also filed a motion to strike plaintiffs' reply materials in connection with this summary judgment motion. I reserve ruling on the motion to strike.

## VI. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNT II OF THE COUNTERCLAIM (BREACH OF CONTRACT)

Count II of the First Amended Counterclaim alleges a claim for breach of contract by plaintiffs. There is a sharp factual dispute between the parties as to, among other things, the terms of the contract between P&P and Skyboy for the creation and development of

the game which was ultimately marketed as Police Trainer. Mr. Boyer
claims that under the terms of his April 1996 letter he is entitled
to a 33 percent royalty on all revenues received by P&P from sales
or licenses of any game that is a sequel to or derivative of Police
Trainer.    Plaintiffs allege that:    there was merely an *oral*
agreement entered into between the parties in 1995; the terms of
the oral agreement provided only for payment of development costs
and a royalty of $50.00 for each unit sold; and they have more than
fulfilled their obligations thereunder. Mr. Boyer testified that
he sent Mr. Pellegrini a letter on or about April 16, 1996
memorializing the terms of their agreement. Mr. Boyer's letter
contains the provision for royalties on sequels and derivatives on
which he relies. Mr. Boyer further testified and alleged under oath
that thereafter P&P performed under the terms of the letter
agreement insofar as it set forth a schedule of payments, thereby
accepting its terms. Mr. Pellegrini denies that he ever received
the letter and avers that he did not see a copy of the letter until
it was produced in discovery in this action. Boyer responds with
documentary evidence that a copy of the letter was sent by Skyboy's
attorneys to P&P's attorneys in 1997 and argues that notice to the
P&P's attorneys was notice to P&P.

The question of the terms of the agreement between the parties
requires a trial. The claim for breach of contract arises under
Illinois law since the contract itself was made and performed in

22

Illinois. The law of Illinois recognizes that the terms of an oral agreement may be modified or altered by a subsequent writing and that the terms sent in writing by one party to the other may become binding by performance. If the recipient continues to perform after receiving the written changes, he is deemed to have accepted the terms of the writing. *Lundin v. Egyptian Construction Co., Inc.*, 331 N.E.2d 208 (Ill.App.Ct. 1975). The Seventh Circuit applies this rule in diversity cases. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 252 (7th Cir. 1996). Here, there is also a disputed issue of fact as to whether Mr. Pellegrini performed in accordance with the terms of Mr. Boyer's letter.

### VII. BOYER'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Count II of the first amended complaint alleges a claim for recovery of overpayments made by P&P to Skyboy in the years 1996 and 1997. Boyer moves for summary judgment on this claim pursuant to 735 ICLS ¶ 5/13-207 which provides a five year statute of limitations on claims for money paid by mistake. Without citation of relevant authority supporting their position, plaintiffs attempt to avoid the statutory time bar by claiming that they did not discover their overpayments until 2004. They do not even cite the discovery rule although it is apparent that they ask the court to apply it. The Illinois discovery rule delays the accrual of a claim

23

or cause of action until "the plaintiff knows or reasonably should know of an injury and that the injury was wrongfully caused." *Clark v. Robert W. Baird & Co.*, 152 F. Supp. 2d 1040, 1043 (N.D.Ill. 2001). A plaintiff is deemed to know that his injury is wrongfully caused when he becomes possessed of sufficient information to put a reasonable person on inquiry to determine whether actionable conduct is involved. *Knox College v. Celotex Corp.*, 430 N.E.2d 976 (Ill. 1981).

A party may not claim the applicability of the discovery rule where, as here, it asserts that the documents from which it discovered the alleged mistakes have been in its possession since the time that the payments were made. *Clark*, *supra*, 152 F. Supp. 2d at 1043-44.

I grant Boyer's motion for summary judgment on Count II of the complaint. The claim for moneys paid by mistake is dismissed with prejudice.

## Conclusion

For the reasons stated in this opinion, Boyer's motion to strike expert testimony is denied; plaintiffs' motion for summary judgment with respect to the Sharpshooter registration is granted; plaintiffs' motion for summary judgment of noninfringement with respect to the police trainer copyright is denied; plaintiffs' motion for summary judgment on count II of the counterclaim for breach of contract is denied; and Boyer's motion for summary

24

judgment on count II of plaintiffs' first amended complaint is granted.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated:   September 28, 2005